IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DENNIS M. ROLIFF,<br><br>  Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>  Defendant. | CASE NO. 5:22-cv-327<br><br>DISTRICT JUDGE<br>BRIDGET MEEHAN BRENNAN<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br>**REPORT &<br>RECOMMENDATION** |

Plaintiff Dennis Roliff filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying Disability Insurance Benefits. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). This matter has been referred to a Magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. Following review, and for the reasons stated below, I recommend that the District Court affirm the Commissioner's decision.

**Procedural history**

In January 2018, Roliff filed an application for Disability Insurance Benefits alleging a disability onset date of May 31, 2010,[1] and claiming he was disabled due to "pudendal nerve entrapment in pelvic muscle area with causal

---

[1] "Once a finding of disability is made, the ALJ must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

effects." Tr. 188, 218. The Social Security Administration denied Roliff's application and his motion for reconsideration. Tr. 89, 110. Roliff then requested a hearing before an Administrative Law Judge (ALJ). Tr. 140.

In November 2020, an ALJ held a hearing. Roliff and a vocational expert testified. Tr. 32-69. The next month, the ALJ issued a written decision finding that Roliff was not disabled. Tr. 15-25. The ALJ's decision became final on January 13, 2022, when the Social Security Appeals Council declined further review. Tr. 1-3; *see* 20 C.F.R. § 404.981.

Roliff filed this action on February 28, 2022. Doc. 1. He asserts the following assignments of error:

> 1. The appointment of Andrew Saul as Commissioner of the Social Security Administration violated the separation of powers. As such, the decision in this case by an ALJ who derived her authority from Andrew Saul was constitutionally defective.
>
> 2. The ALJ erred when she failed to properly consider Roliff's symptoms, including pain, in accordance with Social Security Ruling 16-3p.

Doc. 6, at 1.

**Evidence**

*1.    Personal and vocational evidence*

Roliff was born in 1959 and was 51 years old in March 2011, his date last insured.[2] Tr. 24. He has an associate's degree and used to work as a photographer. Tr. 41-42.

---

[2]    To be entitled to Disability Insurance Benefits, claimants must be wage-earners who accumulated sufficient earning credits and became disabled before the end of their insured date. *See, e.g.*, 42 U.S.C. § 423(c)(1); 20 C.F.R. §

## 2. *Medical evidence*[3]

*Physical:* In May 2007, Roliff saw Daniel Shoskes, M.D., at the Glickman Urological Institute about burning perineal pain. Tr. 319-322. Roliff's exam showed tender pelvic muscles and Dr. Shoskes assessed pelvic muscle spasms. Tr. 322, 325. Roliff joined a research trial for his muscle spasms. Tr. 325-28, 334-36.

In July 2007, Roliff saw Le Chu Su, M.D., for lower abdominal pain. Tr. 329. Dr. Su assessed "groin pain likely ligament or [abdominal] wall strain." Tr. 330.

In August 2007, Roliff saw Dr. Shoskes and reported that his symptoms were unchanged. Tr. 337. Dr. Shoskes referred Roliff to physical therapy. Tr. 337, 340.

At a physical therapy session in September 2007, Roliff stated that his pain was less intense and "doesn't last as long." Tr. 347. Roliff's pain worsened when he had a panic attack, which happened every day. Tr. 347.

X-rays of Roliff's sacrum and pelvis taken in July 2010 were unremarkable. Tr. 306-08. An x-ray of Roliff's lumbar spine showed mild degenerative changes. Tr. 307.

---

404.101; *see also Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988); *Soc. Sec. Disability Claims Prac. & Proc.* § 5:3 (2nd ed.).

[3] The recitation of medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' briefs.

In September 2010, Roliff went to the Center for Pain Management at Summa Western Reserve Hospital for an evaluation. Tr. 273. Roliff stated that his pain did not affect his activities of daily living and "sometimes walking takes his mind off his pain." Tr 273. Roliff's exam findings were normal. Tr. 271. Roliff was assessed with chronic pelvic pain and pudendal nerve entrapment. Tr. 271.

Beginning in November 2010, Roliff returned to the pain management center for the first in a series of 3 Ganglion Impar Block injections to treat his pelvic pain. Tr. 276.

In early December 2010, Roliff saw Ann DiFrangia, D.O., and said that the injection made his pain worse. Tr. 291. Roliff also reported that "sitting for long periods" made his pain worse. Tr. 291.

Later that month, Roliff returned to the pain management clinic for his second Ganglion Impar Block injection. Tr. 278. Roliff stated that he had "good relief from the previous one." Tr. 278.

In January 2011, Roliff had his third Ganglion Impar Block injection. Tr. 280. Roliff reported that he had "good relief" for about 3 weeks after his December injection. Tr. 280.

In February 2011, Roliff told Dr. DiFrangia that his pudendal nerve treatments were helping "a little." Tr. 289.

In May 2011, Roliff went to the pain management clinic for a diagnostic nerve block. Tr. 282. Roliff reported that he had limited relief from the

4

Ganglion Impar Blocks. Tr. 282-283. Before and after the diagnostic block, Roliff rated his pain level as 5 out of 10. Tr. 282.

In July 2011, Roliff saw Dr. DiFrangia and stated that his pain seemed to be intensifying. Tr. 287. Roliff rated his pain 5 out of 10 that day. Tr. 287.

In January 2012, Roliff visited a primary care physician and stated that his Ganglion Impar Block injections didn't help. Tr. 410. Roliff's exam showed normal strength, gait, reflexes, and ranges of motion of his spine and lower extremities. Tr. 410. Roliff reported that he was able to perform his usual activities. Tr. 410.

In February 2013, Roliff saw Steven Shook, M.D., at the Cleveland Clinic Neurological Institute. Tr. 371. Dr. Shook assessed chronic pelvic pain with "no evidence of pudendal neuropathy, although neuralgia without neuropathy" was possible. Tr. 373.

In December 2015, Roliff saw Verlaine Blaser, D.O. Tr. 406. Dr. Blaser assessed chronic pain syndrome. Tr. 406.

*Mental:* Roliff was diagnosed with depression and anxiety. Tr. 285.

In September 2007, Roliff's physical therapist commented that Roliff's "problems with panic attacks and tendency to obsess about medical issues is clearly interfering" with the benefits of therapy. Tr. 351.

In November 2007, Roliff's physical therapist wrote that Roliff "[s]eems very depressed to me[.]" Tr. 363. Later that month, Roliff was diagnosed with anxiety disorder, panic disorder without agoraphobia, and major depressive

5

disorder. Tr. 366. Roliff's exam showed that he was alert, pleasant, and cooperative. Tr. 366. He had a somewhat blunted affect and normal thoughts. Tr. 366. Roliff's "pain behaviors" were "minimal." Tr. 366.

Two days later, Roliff's physical therapist stated that Roliff's depression and anxiety were interfering with his treatment—"He has plateaued and not getting max benefit from treatment." Tr. 369.

During the relevant period, May 2010 to March 2011, records show that Roliff sought mental health treatment 5 times and he was prescribed medication. Tr. 286, 622.

Roliff's mental exam findings in September and October 2010 were not notable and he had a stable mood. Tr. 292-93. In February 2011, Roliff's exam findings were not notable. Tr. 289. In January 2012, Roliff had good eye contact and a normal mood and affect. Tr. 411.

3.  *State agency opinions*[4]

*Physical:* In June 2020, Elizabeth Das, M.D., reviewed Roliff's record and assessed his physical residual functional capacity (RFC).[5] Dr. Das found that Roliff could stand, walk, and sit for about 6 hours in an 8-hour workday and lift and carry 20 pounds occasionally and 10 pounds frequently. Tr. 96-97. Roliff had postural and manipulative limitations. Tr. 96-97. In August 2020, Gary Hinizman, M.D., reviewed Roliff's record and adopted Dr. Das's opinion. Tr. 117-118.

*Mental*: In April 2020, David Dietz, Ph.D., reviewed Roliff's record and assessed his mental RFC. Dr. Dietz found that Roliff had moderate limitations in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and respond appropriately to changes in the work setting. Tr. 97-98. In August 2020,

---

[4] When a claimant applies for disability benefits, the State Agency creates a record. The record includes the claimant's medical evidence. A State Agency disability examiner and a State Agency physician or psychologist review the claimant's record and determine whether and to what extent the claimant's condition affects his or her ability to work. If the State Agency denies the claimant's application, the claimant can ask for reconsideration. On reconsideration, the State Agency updates the record and a second disability examiner and doctor review the file and make a new determination. *See, e.g.*, 20 C.F.R. § 404.1615.

[5] An RFC is an "'assessment of'" a claimant's ability to work, taking his or her "limitations … into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002) (quoting 20 C.F.R. § 416.945). Essentially, it's the SSA's "description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

7

Ermias Seleshi, M.D., reviewed Roliff's record and adopted Dr. Dietz's opinion. Tr. 118-119.

*4.     Hearing testimony*

Roliff, who was represented by counsel, testified at the telephonic administrative hearing held in November 2020. Roliff lived by himself and drove his car when he needed to go somewhere. Tr. 40-41. The longest he can drive is 45 minutes because of pain. Tr. 49-50. When he worked, he would take extra breaks. Tr. 51.

Roliff stated that his pudendal nerve entrapment causes constant pain. Tr. 45-46. Roliff's pain, in turn, caused his depression, anxiety, and "lower back issues and lower abdominal muscle issues." Tr. 46. Sitting causes pressure and makes his pain worse, so Roliff stands throughout the day, although he still has pain when he stands. Tr. 46. Stress also makes Roliff's pain worse. Tr. 46. Roliff's pain affects his ability to concentrate and stay on task and it interrupts his sleep cycle. Tr. 46, 50-51. Roliff also has panic attacks. Tr. 47. When asked if his pain affects his ability to get "ready in the morning," Roliff stated, "[n]ot so much except for putting on shoes," because of bending. Tr. 50. Lying down is most comfortable. Tr. 52. Roliff stated that, during the relevant time-period in 2010, he lay down 2-3 times a day for 15 minutes each time. Tr. 52.

When asked what treatment he's had for his pudendal nerve entrapment, Roliff explained that he's seen various specialists and had a series of nerve blocks, but the blocks didn't help. Tr. 47-48. As of the time of his

8

testimony, Roliff was seeing a pain doctor, who gave him caudal injections every 3 months; those helped to some degree. Tr. 48-49.

Roliff stated that in 2010 he had counseling for his depression and anxiety and he took medication. Tr. 49. When asked if he had followed his doctors' recommendations to attend a chronic pain rehabilitation program, Roliff stated that he could not recall. Tr. 54-55.

The ALJ discussed with the vocational expert Roliff's past relevant work as a photographer. Tr. 57-58. The ALJ asked the vocational expert to determine whether a hypothetical individual with the same age, education, and work experience as Roliff could perform Roliff's past work or any other work if the individual had the limitations assessed in the ALJ's RFC determination, described below. Tr. 58-62. The vocational expert answered that such an individual could not perform Roliff's past work but could perform the following jobs: information clerk, router, and merchandise marker. Tr. 59, 62.

**The ALJ's Decision**

The ALJ made the following findings of fact and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act (the "Act") on March 31, 2011.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of May 31, 2010 through his date last insured of March 31, 2011 (20 CFR 404.1571 *et seq*.).

3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the lumbar spine/chronic

pelvic pain, major depressive disorder and anxiety disorder. (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that: the claimant may sit, with normal breaks, for up to six hours in an eight-hour workday, in increments of no more than thirty minutes each; the claimant may occasionally stoop, kneel, crouch, crawl, or climb ramps or stairs, but may never climb ladders, ropes or scaffolds; the claimant must avoid all exposure to workplace hazards such as unprotected heights; the claimant can perform complex tasks, but not at a production rate pace and not with strict production quotas.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on December 18, 1959 and was 51 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

Tr. 17–24.

**Standard for Disability**

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* § 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a disability determination:

1. Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.

2. Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.

3. Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the ALJ proceeds to the next step.

4. What is the claimant's residual functional capacity and can the claimant perform past relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.

5. Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work experience? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920. Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the vocational factors to perform available work in the national economy. *Id.* If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Id.*

**Standard of review**

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters*, 127 F.3d at 528. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989)). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (quoting 42 U.S.C. § 405(g)).

A court may not try the case de novo, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if substantial evidence or a preponderance of the evidence

12

supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

**Discussion**

*1.     Roliff is not entitled to relief based on his separation of powers argument*

Roliff first argues that because the SSA's former commissioner's tenure protection was unconstitutional, he is entitled to a new administrative hearing.[6] Doc. 6, at 7–9. Defendant concedes that Commissioner Saul's tenure protection, *see* 42 U.S.C. § 902(a)(3), "violate[d] the separation of powers," but denies that the violation warrants a new hearing. I agree with Defendant.

The SSA is headed by a single commissioner who, by statute, may only be removed from office on a presidential "finding … of neglect of duty or

---

[6]     Defendant does not challenge Roliff's standing to bring this claim. Given *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2195–96 (2020), Roliff has standing to raise this issue. *See Collins v. Yellen*, 141 S. Ct. 1761, 1780 (2021) ("As we have explained on many prior occasions, the separation of powers is designed to preserve the liberty of all the people. So whenever a separation-of-powers violation occurs, any aggrieved party with standing may file a constitutional challenge.") (citations omitted). I reject, however, Roliff's assertion that he has standing *because* Defendant hasn't challenged his standing. Doc. 8, at 1.

malfeasance in office." 42 U.S.C. § 902(a)(3). In *Seila Law*, the Supreme Court held that the Constitution's separation of powers prohibits Congress from fashioning a single-member, independent agency whose head is removable only for "inefficiency, neglect of duty, or malfeasance in office." 140 S. Ct. at 2197-2207. When confronted with a similarly structured agency, headed by a single director who could only be removed for cause, the Court in *Collins v. Yellen*, found it itself bound by *Seila Law* and held that the director's for cause removal protection violated the Constitution. 121 S. Ct. 1761, 1784 (2021).

The Court in *Collins* then considered whether the respondents were entitled to any relief. The Court stressed that while the director's removal protection was unconstitutional, there was no question that his appointment was valid. *Id.* at 1787–88. As the Court put it, while the director's removal protection "unconstitutionally limited the President's authority …, there was no constitutional defect in the statutorily prescribed method of appointment to that office." *Id.* at 1787. Because this was the case, "there is no reason to regard any of the actions taken by the" agency "as void." *Id.* And these facts served to distinguish previous cases involving unconstitutional appointments as opposed to unconstitutional removal protections. *Id.* at 1788. The Court then expressed doubt that the Respondents could show that the director's unconstitutional removal protection caused them harm but granted the possibility that "an unconstitutional provision [could] inflict compensable harm." *Id.* at 1788–89. So the Court remanded. *Id.* at 1789.

14

Since the Court decided *Seila Law*, a host of social security claimants have relied on it to argue that they are entitled to new hearings. But after *Collins*, courts have repeatedly rejected these arguments, principally because the claimants have been unable to show that "the unconstitutional removal provision actually harmed" them. *Kaufmann v. Kijakazi*, 32 F.4th 843, 849 (9th Cir. 2022); *see* Defendant's Br. at 8–9 n.4. As the Sixth Circuit has recognized, "*Collins* … provides a clear instruction: To invalidate an agency action due to a removal violation, that constitutional infirmity must 'cause harm' to the challenging party." *Calcutt v. Fed. Deposit Ins. Corp.*, 37 F.4th 293, 316 (6th Cir. 2022), *mandate recalled by* 2022 WL 4546340 (U.S. Sept. 29, 2022) (No. 22A255).

Roliff, however, never leaves the starting gate on this issue; he doesn't attempt to show harm. Instead, he argues that the Commissioner's removal protections render void his actions and those of his delegates. Doc. 6, at 8–9; *see* Doc. 8, at 1. So he misreads *Seila Law* and ignores *Collins's* emphasis on the fact that an unconstitutional removal provision has no bearing on the validity of an appointment or actions taken under that appointment.[7] 141 S. Ct. at 1787–88; *see* Doc. 8, at 5-6 (relying on *Lucia v. SEC*, 138 S. Ct. 2044

---

[7] In his argument heading, Roliff asserts that "the *appointment* of Andrew Saul as Commissioner … violated the Separation of Powers." Doc. 6, at 7 (emphasis added). But Roliff doesn't develop this argument and instead focuses on his argument that Commissioner Saul's tenure protection was unconstitutional. *Id.* at 7–10. So any argument about Commissioner's Saul appointment is waived.

15

(2018), an Appointments Clause decision). And because he hasn't tried to show actual harm, Roliff has necessarily failed to carry his burden to show harm. *See Calcutt*, 37 F.4th at 316. And his vague claims of harm in his reply fare no better. *See* Doc. 8, at 5; *Calcutt*, 37 F.4th at 317 ("vague, generalized allegations" are not enough to satisfy *Collins*).

In his reply, Roliff attempts to distinguish the SSA commissioner's tenure protection from the tenure protections at issue in *Collins* and *Seila*. Doc. 8 at 2. According to Roliff, the protections in these latter cases "were not as limiting as" the commissioner's for-cause protection. Doc. 8, at 2. This is a red herring. The strength of the tenure protection at issue is irrelevant because the SSA concedes that the commissioner's for-cause protection was unconstitutional.[8] Roliff doesn't get bonus points for showing the commissioner's tenure protection was even more unconstitutional. Moreover, Roliff is mistaken. The tenure protection at issue here, "neglect of duty or malfeasance in office," 42 U.S.C. § 902(a)(3), is nearly the same as in *Seila*, *see* 12 U.S.C. § 5491(c)(3) (2012), and stronger than the *for cause* protection at issue in *Collins*, *see* 12 U.S.C. § 4512(b)(2); *Collins*, 141 S. Ct. at 1786 ("the Recovery Act's 'for cause" restriction appears to give the President more removal authority than other removal provisions reviewed by this Court'").

---

[8] Roliff cites nothing to support his argument, perhaps because Congress has never explained what "inefficiency, neglect of duty, or malfeasance in office" means. *See PHH Corp. v. Consumer Fin. Prot. Bureau*, 881 F.3d 75, 130–37 (D.C. Cir. 2018) (Griffith, J., concurring), *abrogated by Seila L. LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020).

16

*2. The ALJ did not err when she evaluated Roliff's symptoms*

Roliff argues that the ALJ's finding that Roliff's reports of symptoms were not as severe as alleged was "contrary to the evidence in the record and harmful error." Doc. 6, at 13.

To evaluate the "intensity, persistence, and limiting effects of an individual's symptoms," the ALJ considers medical evidence, the claimant's statements, other information provided by medical sources, and any other relevant evidence in the record. *See* SSR 16-3p, 2016 WL 1119029, at *4 (March 16, 2016); 20 C.F.R. § 404.1529. *Other relevant evidence* includes: daily activities; the location, duration, frequency, and intensity of pain or symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication; treatment, other than medication, to relieve pain; any measures used to relieve pain; and "[o]ther factors concerning … functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 404.1529(c). "The ALJ need not analyze all seven factors, but should show that he considered the relevant evidence." *Hatcher v. Berryhill*, 2019 WL 1382288, at *15 (N.D. Ohio Mar. 27, 2019) (citing *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp.2d 724, 733 (N.D. Ohio 2005)).

Roliff argues that the ALJ's "brief statement" that Roliff could work part time, maintain an independent household, and exercise 3 times per week "was not an accurate restatement of the evidence" because "no such comments were made by Roliff to his medical providers." Doc. 6, at 15 (citing Tr. 21-22). Roliff

17

does not identify a rule that says the ALJ can only cite comments a claimant made to medical providers. He does not deny that he worked part time during the relevant period. And Roliff told Dr. DiFrangia that he exercised 3 times a week and told his pain management provider that pain didn't affect his activities of daily living. Tr. 273, 285. So the ALJ's comment that Roliff worked part time, exercised 3 times a week, and maintained an independent household were accurate.[9]

Also, Roliff ignores the rest of the ALJ's decision. The ALJ wrote that Roliff's sacrum and pelvic x-rays were unremarkable. Tr. 20. The ALJ observed that Roliff told his pain management doctor he could "distract himself from the pain by walking." Tr 20. The ALJ commented that Roliff had a series of nerve blocks that he initially reported were helpful and then later reported were not helpful. Tr. 20. The ALJ discussed Roliff's medication and his physical therapy. Tr. 21. The ALJ wrote that the record showed "little indication of [the medication's] efficacy," other than the fact that Roliff continued to use the medications. Tr. 21. The ALJ stated that Roliff had normal or mild physical exam findings and mostly normal mental exam findings. Tr. 21. The ALJ explained that the evidence she recounted indicated that Roliff's symptoms were not as severe as alleged, findings that Roliff does not challenge.

The ALJ did not err when she evaluated Roliff's symptoms.

---

[9] Roliff testified that he lived alone. Tr. 40.

**Conclusion**

For the reasons explained above, I recommend that the Court affirm the Commissioner's decision.

Dated: October 31, 2022

                                            */s/ James E. Grimes Jr.*
                                            James E. Grimes Jr.
                                            U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019).